**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| DIMITRIC FREEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-317-TLS |
| | ) | |
| STATE OF INDIANA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the Court on the remaining Defendants', City of Fort Wayne and Detective Mark Deshaies,[1] Motion for Summary Judgement [ECF No. 40], filed on August 6, 2018, and Motion to Strike [ECF No. 50], filed on October 15, 2018. The Plaintiff, Dimitric Freeman, filed a response [ECF No. 48] on October 1, 2018. The Defendants filed a reply [ECF No. 49] in further support of their Motion for Summary Judgment on October 15, 2018. The Plaintiff has not filed a response to the Defendant's Motion to Strike and the deadline to do so has passed.

## BACKGROUND

Freeman alleges several constitutional claims and state law tort claims against the Defendants in connection with his arrest, the search of his residence at 1006 Savilla Avenue, and seizure of his property.

---

[1] Defendants David Gladiuex and the State of Indiana have been dismissed from this case. (*See* ECF Nos. 19 and 37, respectively.)

**A.      Surveillance of 1006 Savilla Avenue and Freeman**

Detective Marc Deshaies, a detective with the Gang and Violent Crimes Unit in the City of Fort Wayne, was working around Savilla Avenue in Fort Wayne on January 8, 2016, at approximately 11:15 p.m. (Defs.' Mot. for Summ. J., Ex. A, Detective Deshaies Aff. ¶ 4, ECF No. 40–1.) Detective Deshaies was in the area to identify the Plaintiff's, Dimitric Freeman, potential residence. (*Id.*) Freeman was suspected of stealing an automobile from a family member. (*Id.* ¶ 5.) The victim of the theft indicated that Freeman lived on Savilla Avenue and that the stolen vehicle may be located outside of Freeman's house. (*Id.*) Freeman had been previously arrested in October 2015 for stealing the same vehicle, a blue 2011 Chevy Camaro with license plate number WKM933. (Defs.' Mot. for Summ. J., Ex. C, Search Warrant Aff. at 1, ECF No. 40–3.)

After conducting surveillance, Detective Deshaies determined that Freeman appeared to be living at 1006 Savilla Avenue. (Defs.' Ex. A, ¶ 7.) Detective Deshaies had information that Freeman may be driving a blue Dodge Charger with a license plate containing the numbers "818." (*Id.* ¶ 8.) He located a blue Dodge Charger, with plate number "818LRP," parked behind 1006 Savilla Avenue. (*Id.* ¶ 9.) Detective Deshaies started surveillance of the location to see if Freeman would lead him to the stolen vehicle. (*Id.*)

Subsequently, Detective Deshaies observed Freeman walking down the west side of 1006 Savilla Avenue. (*Id.* ¶ 10.) Detective Deshaies then observed Freeman enter the blue Dodge Charger from the driver's side, and within one to two minutes, the vehicle started driving. (*Id.* ¶ 11.) Detective Deshaies followed the vehicle to gather information but lost the vehicle after it rapidly accelerated. (*Id.* ¶ 12.) When Detective Deshaies ran a check on Freeman, he learned that

Freeman was listed as a Habitual Traffic Violator for Life with the Bureau of Motor Vehicles in Indiana. (*Id.* ¶ 14.)

On February 6, 2016, at approximately 1:15 a.m., Detective Deshaies conducted visual surveillance of 1006 Savilla Avenue. (*Id.* ¶¶ 15–16.) Detective Deshaies observed Freeman exit the house and enter the blue Dodge Charger with license plate number 818LRP. (*Id.* ¶ 16.) After the vehicle began to drive, Detective Deshaies followed the vehicle in an attempt to effectuate a stop. (*Id.* ¶ 18.) However, Detective Deshaies terminated his pursuit of the blue Dodge Charger for safety concerns after the vehicle rapidly accelerated. (*Id.*) On February 18, 2016, Detective Deshaies completed an Affidavit for Probable Cause for two counts against Freeman for Operating a Vehicle after a Lifetime Suspension, a Level 5 Felony. (*Id.* ¶ 19; Defs.' Mot. for Summ. J., Ex. B, Aff. for Probable Cause, ECF No. 40–2.)

On February 17, 2016, at approximately 4:43 p.m., Fort Wayne police officer Geoffrey Norton informed Detective Deshaies that he observed a blue 2009 Dodge Charger driving around Oxford Street. (*Id.* ¶ 23.) Officer Norton attempted to conduct a traffic stop of the vehicle after he observed the driver fail to stop for a stop sign. (*Id.* ¶ 24.) Subsequently, the vehicle rapidly accelerated, and Officer Norton lost sight of the vehicle. (*Id.* ¶ 25.) Norton eventually located the vehicle parked on the side of the street with the tail of the vehicle far out from the curb, suggesting that the vehicle had been hastily parked. (*Id.* ¶ 27.) The license plate number of the blue Dodge Charger that Officer Norton observed was 818LRP. (*Id.* ¶ 28.)

Law enforcement continued to conduct surveillance and collect tips regarding Freeman. (*Id.* ¶ 35.) The tips included several reports that Freeman was selling marijuana and cocaine, as well as storing firearms and narcotics, at a residence between Fairfield and Broadway. (*Id.*) The residence at 1006 Savilla Avenue is between Fairfield and Broadway. (*Id.*)

On February 26, 2016, Detective Deshaies prepared a Search Warrant Affidavit to search 1006 Savilla Avenue for evidence relating to narcotics and narcotics-related activities and evidence. (*Id.* at ¶ 36; Defs.' Ex. C.) Detective Deshaies requested a "NO KNOCK" warrant for the 1006 Savilla Avenue residence due to Freeman's history with law enforcement. (*Id.* at 4.) Law enforcement had reports indicating that Freeman had a history of resisting arrest. (*Id.*) Additionally, Freeman was a convicted felon and had been arrested multiple times for weapons-related offenses. (*Id.*) Allen Superior Court Judge Frances Gull signed the search warrant for the 1006 Savilla Avenue residence on February 26, 2016. (Defs.' Mot. for Summ. J., Search Warrant, Ex. D, ECF No. 40–4.)

**B.      Search of 1006 Savilla Avenue and Freeman's Arrest**

Freeman had a scheduled court appearance for pending city ordinance violations regarding pets on the property at 1006 Savilla Avenue on March 2, 2016, at 1:30 p.m. (Defs.' Ex. A, ¶ 39.) To reduce the possibility of Freeman fleeing and causing harm to the public, it was decided that Freeman would be apprehended for pending felony charges of Operating a Vehicle After a Lifetime Suspension at the court appearance. (*Id.*) It was also decided that the search warrant for drug-related evidence at 1006 Savilla Avenue would be served the same day as Freeman's court appearance to minimize the danger to law enforcement. (*Id.*) On March 2, 2016, Detective Deshaies and other law enforcement officials detained Freeman and informed him of the Operating a Vehicle After a Lifetime Suspension charges. (*Id.* ¶¶ 40–41.) In addition, Detective Deshaies informed Freeman that law enforcement would be executing a search warrant on 1006 Savilla Avenue. (*Id.* ¶ 44.)

At 2:55 p.m., on March 2, 2016, law enforcement effectuated the search warrant at 1006 Savilla Avenue. (*Id.* ¶ 49.) No one answered the door in response to law enforcement announcing

their presence. (*Id.* ¶ 50.) Law enforcement subsequently breached the front door. (*Id.* ¶ 51.) Due to the presence of multiple dogs inside the residence, law enforcement used a flash bang distraction device after breaching the front door. (*Id.*) Narcotics and items used for narcotics packaging and dealing were located and seized from the residence. (*Id.* ¶¶ 53, 59, 63–68.)

Based on the contraband found in Freeman's house during the execution of the search warrant, Detective Deshaies prepared an Affidavit for Probable Cause to Arrest for Dealing in Cocaine or a Narcotic Drug on March 2, 2016. (Defs.' Mot. for Summ. J., Mar. 2, 2016 Probable Cause Aff. for Narcotics Dealing, Ex. E, ECF No. 40–5.) Subsequently, on March 8, 2016, an Allen Superior Court judge issued a warrant for Freeman's arrest for drug-related and traffic-related criminal charges. (Defs.' Mot. for Summ. J., March 8, 2016 Arrest Warrant, Ex. F., ECF No. 40–6.)]

During the March 2, 2016, search, detectives located several dogs inside and outside of the residence. (Defs.' Ex. A, at ¶¶ 54–57.) Animal Care and Control Officers Erika Hedge and Lisa Cain were deployed to assist Fort Wayne police officers with the search of 1006 Savilla Avenue. (Defs.' Mot. for Summ. J., Aff. of Lisa Cain, Ex. G, ECF No. 40–7.)

Animal Care determined that the dogs found at 1006 Savilla Avenue, three adult dogs and two litters of puppies, were living in unsanitary and unsafe conditions. Upon entering the residence, Animal Care officers observed "an overwhelming smell of dog feces and urine." (*Id.* ¶ 6.) One litter of puppies was found in the back-entry area of the house. (*Id.* ¶ 7.) The mother dog and eight puppies were found in a wired enclosure with a piece of scrap linoleum covered in feces and urine serving as the floor. (*Id.* ¶¶ 7–8.) The mother dog and puppies were coated in feces and urine. (*Id.*) The mother dog was also found to be underweight. (*Id.* ¶ 18.)

Another mother dog, severely underweight, along with a litter of puppies was found in the upstairs portion of the residence. (*Id.* ¶¶ 9, 18.) The Animal Care officers observed that the upstairs bathroom and attic area where the second mother dog and litter were confined "smelled worse," and "was hot and stagnant." (*Id.* ¶ 9.) They also observed dog feces smeared all over the inside of the upstairs bathroom door, tub, toilet, and floor. (*Id.* ¶ 10.) There were twenty to thirty piles of feces on the attic boards, where the mother dog was found lying in the corner next to the chimney. (*Id.*) The mother dog and her litter were also coated in feces and urine. (*Id.*)

A male, adult dog was found outside the residence in a kennel. (*Id.* ¶ 11.) There was no food or water in the male dog's kennel. (*Id.* ¶ 12.)

**C.     Removal of Dogs from Freeman's Residence**

Animal Care officers removed all the dogs and puppies from the residence and posted an Animal Welfare Notice in the mailbox at 1006 Savilla Avenue. (*Id.* ¶ 17.) Animal Care Officer Hedges prepared five summonses to be issued to Freeman. (*Id.* ¶ 20.) The summonses were issued for Failure to Obtain a Pet Registration under Local Ordinance 91-050(a); Failure to Purchase Rabies Vaccinations under Local Ordinance 91.075; Failure to have a Major Breeders Permit under Local Ordinance 91.055; Failure to Keep Animal Enclosures in a Sanitary Condition under Local Ordinance 91.017; and Failure to Obtain Required Vet Care under Local Ordinance 91.016. (*Id.*.)

On March 2, 2016, Animal Care officers went to Allen County Jail to meet with Freeman regarding the dogs removed from the residence. (*Id.* ¶ 21.) Animal Care officers asked Freeman if he had anyone who could claim the 19 dogs removed from the residence. (*Id.* ¶ 22.) Freeman indicated that the dogs could be released to his brother, Jernard Freeman; his mother, Theresa

Freeman; and his girlfriend, Destiny Martin. (*Id.*) Animal Care officers then issued Freeman the

five summonses prepared by Officer Hedges. (*Id.*) Freeman signed the five summonses. (*Id,*)

Additionally, on March 2, 2016, a legal notice was given to Freeman indicating that his

dogs had been impounded by the Department of Animal Care and Control. (*Id.* ¶ 26.) Freeman

signed the legal notice, indicating that his dogs could be released to Destiny Martin, Theresa

Freeman, and Jernard Freeman. (*Id.*; Defs.' Mot. for Summ. J., Dimitric Freeman Dep., Ex. K, at

32, ECF No. 40–11.)

On March 3, 2016, consistent with Fort Wayne Ordinance 91.078, Animal Care Officer

Randy Thornton explained to Jernard Freeman that puppies found at the residence could not be

released to anyone other than Dimitric Freeman because the puppies were younger than eight

weeks old. (Defs.' Ex. G, at ¶¶ 24, 25.) Dimitric Freeman had five days to reclaim the puppies.

(*Id.* ¶ 28.) Freeman did not reclaim the puppies. (*Id.*) On March 7, 2016, one female adult dog

was released to Destiny Martin, one female adult dog was released to Theresa Martin, and the

adult male dog was released to Jernard Freeman. (*Id.* ¶ 27.)

The puppies were evaluated by Animal Care and Control. (*Id.* ¶ 29). On March 9, 2016,

some of the puppies were euthanized because the puppies were snarling, growling, and biting

each other, and the intensity of the aggressive behavior was not consistent with normal puppy

behavior at their age. (*Id.*). Instead, the level of aggression was consistent with an aggressive

adult dog. (*Id.*). When interacting with the dog handlers, the puppies snarled, bit, and charged

toward the handlers in an aggressive manner. (*Id.*). When the puppies were picked up, they

growled, snarled, and attempted to bite. (*Id.*) The puppies were evaluated over several days with

multiple interactions and each time showed the same repeated behavior. (*Id.*). The puppies never

displayed appropriate social interactions with humans. (*Id.*). The puppies that were not euthanized were approved for adoption. (*Id.* ¶ 30.)

**D.      Allen Superior Court Case Against Freeman for Animal Welfare Violations**

The *City of Fort Wayne v. Dimitric Freeman*, Allen Superior Court, 02D05-1603-OV-000203, involved the violations brought against Dimitric Freeman for failing to obtain a major breeder permit and failing to maintain sanitary conditions, which were uncovered during the execution of the search warrant at Dimitric Freeman's house at 1006 Savilla Avenue on March 2, 2016. (*See* Defs.' Mot. for Summ. J., 02D05-1603-OV-000203 Allen Superior Court Docket Sheet, Ex. O, ECF No. 40–15). In this action, Freeman filed a motion to suppress, claiming that the search warrant violated his Fourth Amendment rights, and that any evidence obtained from it, including evidence related to the dog safety charges, should be suppressed. (*See* Defs.' Ex. O.) As in this instant case, Freeman claimed that Detective Deshaies knowingly misrepresented and fabricated material facts to the judge to obtain the search warrant. (Defs.' Mot. for Summ. J., Mot. to Suppress, Ex. L, ECF No. 40–12.)

On May 11, 2016, a hearing took place in the Allen Superior Court on Freeman's Motion to Suppress. (Defs.' Ex. O; Defs.' Mot for Summ. J., Mot. to Suppress Hr'g Tr., Ex. M, ECF No. 40–13.) On May 24, 2016, the Allen Superior Court denied Freeman's Motion to Suppress. (Defs.' Mot. for Summ. J., Order Denying Mot. to Suppress, Ex. N, ECF No. 40–14.) On January 11, 2017, Allen Superior Court Judge Frances Gull entered judgment against Freeman for a Major Breeder Permit Violation and a Failure to Maintain Sanitary Conditions Violation after a bench trial. (Defs.' Ex. O at 6.)

**E.      Instant Action**

On May 26, 2017, Freeman filed a five-count Complaint in this Court.[2] The Court understands that Freeman has alleged the following claims against the Defendants:

- The search of Freeman's house on March 2, 2016, was predicated on a search warrant affidavit that contained fabricated information, and therefore, the warrant violated the Fourth Amendment and 18 U.S.C. § 1983 for being overbroad.

- Freeman was unlawfully arrested for driving with a lifetime suspension and drug charges on the basis that the arrest warrants were obtained on information that Detective Deshaies fabricated.

- Freeman's Fifth Amendment, as well as his procedural and substantive due process rights, were violated when the law enforcement obtained a search warrant based on fabricated information, which led to the Freeman's property being seized without notice or an opportunity to be heard.

- Freeman's property was damaged during law enforcement's search of his residence, in violation of the Fourth Amendment.

- Defendants are liable for conversion and intentional infliction of emotion distress under Indiana law.

- The Defendants engaged in malicious prosecution for prosecuting Freeman in connection with the traffic-related and drug-related charges, in contravention of federal law.

---

[2] The Plaintiff incorrectly numbered the counts in the Complaint.

# LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The nonmoving party must marshal and present the Court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). A court must deny a motion for summary judgment when the nonmoving party presents admissible evidence that creates a genuine issue of material fact. *Luster v. Ill. Dep't of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011) (citations omitted). A court's role in deciding a motion for summary judgment "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. [A] court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Heochst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Facts that are outcome determinative under the applicable law are material for summary judgment purposes. *Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997). Although a bare contention that an issue of material fact exists is insufficient to create a factual dispute, a court must construe all facts in a light most favorable to the nonmoving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491–92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

**ANALYSIS**

**A.      Motion to Strike**

Before the Court addresses the Motion for Summary Judgment, it will dispose of the Defendants' Motion to Strike [ECF No. 50]. The Defendants request this Court to strike three categories of evidence Freeman included in his response to Defendants' Motion for Summary Judgment. The Defendants appear to base their Motion to Strike on Federal Rule of Civil Procedure 56(c)(2), which states that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Because the Court can distinguish which exhibits, affidavits, and statements may properly be considered when deciding whether summary judgment is appropriate, the Court DENIES the Defendants' Motion to Strike. The Court has noted the Defendants' objections and will consider the objections to the extent they arise in the Court's summary judgment analysis.

**B.      Collateral Estoppel on Issue of Search Warrant's Validity**

Freeman's Complaint and summary judgment briefing is replete with the argument that law enforcement's search of his residence at 1006 Savilla Avenue was unlawful as the search warrant was obtained because Detective Deshaies included false and fabricated information in the corresponding search warrant affidavit. The Defendants contend that Freeman is collaterally estopped from making such an argument because Freeman previously challenged the search warrant on the argument that Detective Deshaies allegedly included false and fabricated information in the search warrant affidavit in *City of Fort Wayne v. Dimitric Freeman*, in Allen

Superior Court, 02D05-1603-OV-000203. (*See* Defs.' Mem. in Supp. of Summ. J. at 3–5, ECF No. 41.)

In *City of Fort Wayne v. Dimitric Freeman*, Freeman was prosecuted for failing to obtain a major breeder permit and failing to maintain sanitary conditions that law enforcement uncovered during the execution of the search warrant at Freeman's residence on March 2, 2016. In that case, Freeman filed a motion to suppress claiming that Detective Deshaies obtained the search warrant without probable cause and knowingly included false information in the search warrant affidavit. (Defs.' Ex. L at 1.) In Allen Superior Court, Freeman contended that the search warrant affidavit necessarily contained false information because his blue Dodge Charger was at the mechanic during the time Detective Deshaies attested he observed the car outside the Freeman residence. (*Id.* at 3.) Freeman presented arguments regarding the same during a motion to suppress hearing held on May 11, 2016 (Defs.' Ex. M at 33–39.) Nevertheless, after hearing Freeman's arguments, the Allen Superior Court judge denied Freeman's motion to suppress. (Defs.' Ex. N.) On January 4, 2017, both parties presented their arguments and evidence during a bench trial. (Defs.' Ex. O at 6.) Judgment was entered against Freeman for the major breeder permit violation and the failure to maintain sanitary conditions violation. (*Id.*) A review of the Allen Superior Court case docket shows that Freeman did not appeal the judgment. (*Id.*)

Accordingly, to determine whether defensive collateral estoppel applies in this case, this Court must look to Indiana law. *See Best v. City of Portland*, 554 F.3d 698, 701 (7th Cir. 2008). Under Indiana law, collateral estoppel, "bars subsequent litigation of an issue necessarily adjudicated in a former suit if the same issue is presented in the subsequent suit." *Id.* (citations and internal quotations omitted). In Indiana, "[t]he principal consideration with the defensive use of collateral estoppel is whether the party against whom the prior judgment is pled had a full and

fair opportunity to litigate the issue and whether it would otherwise be unfair under the circumstances to permit the use of collateral estoppel." *Jennings v. State*, 714 N.E.2d 730, 732 (Ind. Ct. App. 1999). There are four elements that must be met for defensive collateral estoppel[3] to apply under Indiana law: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. *In re Luedtke*, 429 B.R. 241, 250 (Bankr. N.D. Ind. 2010) (collecting cases). Courts in Indiana have also emphasized that a final judgment on the merits is required in the earlier action for collateral estoppel to apply. *Jennings*, 714 N.E.2d at 732

Usually, a decision on a motion to suppress is not considered a final judgment, and therefore cannot be the basis of a collateral estoppel argument. *See Best*, 554 F.3d at 701. The general rule, however, does not apply when a decision on a motion to suppress can be appealed. *Compare Jennings*, 714 N.E.2d at 734 (granting the defendant's motion to suppress was "tantamount to a dismissal of the case," and therefore was considered a final, appealable judgment for the purposes of the collateral estoppel analysis), *with Paige v. City of Fort Wayne*, No. 1:09–cv–143, 2010 WL 3522526, *5 n.9 (N.D. Ind. Sept. 2, 2010) (defendants could not collaterally estop plaintiff from arguing Fourth Amendment issue decided in an earlier criminal case because plaintiff's ultimate acquittal denied plaintiff right to appeal the denial of the motion to suppress and a full and fair opportunity to litigate the issue).

The Court agrees with the Defendants that collateral estoppel applies to the search warrant's validity in this case. First, the issue sought to be precluded in this action is identical to

---

[3] Under Indiana law, defensive, as opposed to offensive, collateral estoppel occurs "when the defendant seeks to prevent a plaintiff from asserting a claim which the plaintiff had previously litigated and lost against another defendant." *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1037 (Ind. 1993).

the earlier action—whether the search warrant of Freeman's residence was predicated on false information that Detective Deshaies included in the search warrant affidavit. Second, the issue was litigated in the previous action. In the Allen County criminal case, Freeman filed a motion to suppress contending that the search warrant violated his Fourth Amendment rights. The parties briefed the issue and presented their respective arguments at the motion to suppress hearing. Third, a determination of the issue on the validity of the search warrant was essential to the final judgment. A finding by the judge that the search warrant was valid was essential to the final judgment against Freeman because the judge's denial of the motion to suppress allowed evidence of the animal-control related charges to be admitted against Freeman at trial to secure the judgment against him. *See Jennings*, 714 N.E.2d at 734 (finding that order granting criminal defendant's motion to suppress was "tantamount to a dismissal," and was thus considered to be a final, appealable judgment for the purposes of collateral estoppel.) Fourth, Freeman was represented by attorney Marcia Linsky during the prior litigation. (*See* Defs.' Ex. O.)

Moreover, there was a final judgment on the merits. The judge in the earlier case found against Freeman on the motion to suppress and entered judgment against Freeman after a bench trial. (*Id.*) Although Freeman would have had an opportunity to appeal the motion to suppress decision after judgment was entered against him for the major breeder permit violation and failure to maintain sanitary conditions violation, the state court docket indicates that Freeman did not lodge an appeal. Therefore, Freeman had a full and fair opportunity to litigate the validity of the search warrant.

Freeman presents three arguments to contend that collateral estoppel does not apply in this case. (Pl.'s Resp. to Mot. for Summ. J. at 9–10, ECF No. 48.) Freeman's three arguments are unpersuasive.

First, Freeman claims that collateral estoppel does not apply because the parties in this instant case (Freeman, the City of Fort Wayne, and Detective Deshaies) and the state court case (Freeman and City of Fort Wayne) are not the same. In other words, according to Freeman, because Detective Deshaies was not a party to the previous action, Detective Deshaies cannot, along with the City of Fort Wayne, assert collateral estoppel in the present case. Under Seventh Circuit case law, however, collateral estoppel may be used by a non-party to an earlier action when the party in the original action and the non-party share "a commonality of interest" and "sufficiently represent each other's interests." *Studio Art Theatre of Evansville, Inc. v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996) (internal quotation marks omitted). Here, there is a "commonality of interest" between the City of Fort Wayne and Detective Deshaies as the City of Fort Wayne represented Detective Deshaies' interests during the earlier criminal matter and suppression issue. The City of Fort Wayne had the same interest as Detective Deshaies in its defense against Freeman's motion to suppress—namely, demonstrating that Detective Deshaies did not fabricate any information to obtain a search warrant.

Second, Freeman claims that collateral estoppel does not apply because in the Allen Superior Court case, Freeman exercised his right not to testify during the motion to suppress hearing. Freeman fails to cite to any authority supporting the proposition that a plaintiff's decision not to testify during a motion to suppress hearing, as a defendant in a previous case, bars the application of collateral estoppel on the motion to suppress issue. Further, such a proposition would prevent collateral estoppel from applying to any issue decided in a previous matter in which a party decided not to testify during a proceeding in that previous matter. Such a result would create a runaround for litigants seeking to avoid the application of collateral estoppel in future cases to which they are parties.

Third, Freeman claims all the charges were dismissed arising out of the March 2, 2016, search of his house. Freeman's argument here is highly misleading. The dismissal Freeman references relates to a separate criminal action (i.e., *State of Indiana v. Dimitric Freeman*, 02C01-1510-F5-303), not the criminal action involving the major breeder permit violation and failure to maintain sanitary conditions violation for which the Defendants seek collateral estoppel effect (i.e., *City of Fort Wayne v. Dimitric Freeman*, 02D05-1603-OV-000203). Instead of a dismissal, judgment was entered against Freeman for the major breeder permit violation and failure to maintain sanitary conditions violation after his motion to suppress was denied.

Accordingly, the doctrine of collateral estoppel bars Freeman from arguing in this action that the search of his residence was predicated on a search warrant containing false and fabricated information in violation of the Fourth Amendment and 18 U.S.C. § 1983.

## C.  False Arrest and False Imprisonment Claims – Probable Cause for Driving with Suspended License and Drug Dealing

In his Complaint, Freeman alleges that he was unlawfully arrested and imprisoned for traffic and drug offenses based on arrest warrant affidavits that contained information Detective Deshaies allegedly fabricated. It is unclear whether Freeman brings these claims pursuant to federal law or state law. Regardless, this Court finds that Freeman has not presented any genuine issue of material fact with respect to his false arrest and false imprisonment claims under federal law or state law.[4]

---

[4] Freeman's false imprisonment claim necessarily emanates from his claim that he was unlawfully arrested. Thus, to the extent that Freeman fails on his false arrest claim, he also fails on his false imprisonment claim under federal and Indiana law. *See Bentz v. City of Kendallville*, 577 F.3d 776, 780 (7th Cir. 2009) ("Indeed, Indiana courts have used the terms 'false arrest' and 'false imprisonment' interchangeably when a plaintiff's claim stems from detention by authorities without probable cause.") (collecting cases); *Busnovetsky v. Kooyumijan*, 2002 WL 1941555, *1 (N.D. Ill. Aug. 22, 2002) ("Since

### 1. *Federal Law*

The existence of probable cause is an absolute defense to a claim that an officer effectuated an arrest in violation of the Fourth Amendment and § 1983. *Lawson v. Veruchi*, 637 F.3d 699, 703 (7th Cir. 2011); *Montano v. City of Chicago*, 535 F.3d 558, 568 (7th Cir. 2008). Therefore, if probable cause existed to arrest Freeman for traffic-related and drug-related criminal offenses, then Freeman's false arrest claim in violation the Fourth Amendment and § 1983 claim fails. "Probable cause exists if, at the time of the arrest, the facts and circumstances within the defendant's knowledge are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed . . . an offense." *Lawson*, 637 F.3d at 703 (internal quotations and citations omitted).

In general, when an officer obtains a warrant acting in good faith from a magistrate, "the magistrate's issuance of the warrant shields the officer from liability for the illegal arrest." *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985). An arrest warrant, however, "does not erect an impenetrable barrier to impeachment of a warrant affidavit." *Id* (citation omitted). "If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth and no accurate information sufficient to constitute probable cause attended the false statements, not only is his conduct the active cause of the illegal arrest, but he cannot be said to have acted in an objectively reasonable manner." *Id.*

The Court understands Freeman to argue that he has presented sufficient evidence of factual dispute that Detective Deshaies knowingly included false information in the arrest warrant affidavit and that without that false information, there was no probable cause to arrest Freeman. The Court disagrees—the evidence indisputably demonstrates that probable cause did

---

[plaintiff's] false imprisonment claim [under § 1983] necessarily flows from her false arrest claim [under § 1983], [plaintiff's] false imprisonment claim must fail as well.").

exist at the time of the arrest that Freeman was engaged in criminal traffic offenses and drug dealing.

First, Detective Deshaises had probable cause to arrest Freeman for Operating a Vehicle After a Lifetime Suspension. Detective Deshaies personally witnessed Freeman enter a vehicle from the driver's side and then drive off on two separate occasions—while Freeman was classified as a Habitual Traffic Violator for Life. On January 8 and February 6, 2016, Detective Deshaies observed Freeman enter the driver's side of the blue Dodge Charger, and he subsequently observed the vehicle rapidly accelerate from his residence. When Detective Deshaies personally checked Freeman's information, he learned that Freeman was listed as a Habitual Traffic Violator for Life with the Indiana Bureau of Motor Vehicles. Later, on February 18, 2016, Detective Deshaies prepared an Affidavit for Probable Cause for two counts of Operating a Vehicle After a Lifetime Suspension, a Level 5 felony. (Defs.' Ex. B.) An Allen Superior Court judge signed the probable cause affidavit to arrest Freeman. (*Id.*) It was reasonable for Detective Deshaies to believe that Freeman had committed the crime of operating a vehicle after a lifetime suspension based on Detective Deshaies knowledge that Freeman was a Habitual Traffic Violator for Life and his personal observation of Freeman entering a vehicle from the driver's side and then immediately thereafter, seeing the vehicle drive off. Hence, Detective Deshaies had the necessary probable cause to seek an arrest warrant for Freeman, for operating a vehicle after a lifetime suspension.

Next, law enforcement had the necessary probable cause to arrest Freeman for drug dealing. Detective Deshaies prepared an Affidavit for Probable Cause for Dealing in Cocaine or a Narcotic Drug. (Defs.' Ex. E.) The arrest warrant affidavit was based on the items found in Freeman's house during the execution of the search warrant. The items found included 86.2

grams of white powder material that field tested positive for the presence of cocaine, three digital scales with white residue on their surfaces, and a large quantity of clear plastic sandwich baggies. (*Id*.) It would be reasonable for an officer encountering such items during a search of a house to believe that the owner or resident of that house was engaged in drug dealing. Hence, the presence of such items found in Freeman's residence gives rise to the requisite probable cause warranting Freeman's arrest for drug dealing activity.

As this Court finds that Detective Deshaies had probable cause to arrest Freeman for traffic-related and drug-related offenses, Freeman must present a genuine issue of material fact as to the issue of probable cause to survive summary judgment on his false arrest claim. *See Simmons v. Pryor*, 26 F.3d 650, 653 (7th Cir. 1993) ("Once a police officer defending a claim of false arrest moves for summary judgment on the ground that his actions were supported by probable cause and submits evidence that a duly authorized judicial officer found probable cause, the defendant has necessarily put probable cause at issue, and the plaintiff must thus come forward and show that there is an issue of fact as to the existence of probable cause to survive summary judgment.").

Freeman argues that the law enforcement fabricated information in the probable cause affidavits in support of the arrest warrants. At the outset, Freeman presents no evidence beyond Freeman's own affidavit that Detective Deshaies fabricated any information or otherwise lacked probable cause with respect to the arrest warrant affidavit for the drug dealing charges. In connection with the arrest warrant for the traffic-related criminal offenses, Freeman contends that law enforcement lacked probable cause and necessarily fabricated information because the blue Dodge Charger that Detective Deshaies claims to have seen on January 8, 2016, and February 6, 2016, was at Fox & Fox for mechanical repairs. In support of his theory, Freeman

presents an invoice from Fox & Fox as well as Freeman's own statements that he did not enter the blue Dodge Charger on January 8 and February 6, 2016, because the vehicle was at Fox & Fox. (Pl.'s Resp. at 9.)

The Defendants contend that collateral estoppel bars Freeman from relitigating this issue of fact—whether the blue Dodge Charger that Detective Deshaies claims to have seen Freeman enter was instead undergoing repairs at Fox & Fox on January 8, 2016, and February 6, 2016—decided in the earlier Allen Superior Court action, *City of Fort Wayne v. Dimitric Freeman*, 02D05-1603-OV-000203.

Collateral estoppel "may preclude relitigation of *an issue of fact* or law resolved in a prior state criminal proceeding," including in a proceeding involving a state court's denial of a motion to suppress. *See Johnson v. Cornelison*, 1993 WL 87735, *2 (N.D. Ill. Mar. 23, 1993) (emphasis added); *see also*, *Indiana Dep't of Env't Mgmt v. Conrad*, 614 N.E.2d 916, 923 (Ind. 1993) ("Collateral estoppel bars *relitigation of a fact* or issue where that *fact* or issue was necessarily adjudicated in an earlier suit and that *fact* or issue is presented in the subsequent lawsuit." (emphases added)). Again, this Court must look to the collateral estoppel law of Indiana, as outlined above, to determine whether Freeman's argument that the blue Dodge Charger was at Fox & Fox on January 8, 2016, and February 6, 2018 is barred.

Preliminarily, the issue of fact that the Defendants seek to preclude is the same as the issue involved in the prior action, and this issue was litigated in the prior criminal action. Freeman's motion to suppress briefing and transcript from the state court motion to suppress hearing make clear that Freeman sought to undermine Detective Deshaies claim that he observed Freeman driving a blue Dodge Charger on January 8 and February 6 by arguing the vehicle was at Fox & Fox on those dates. (Defs.' Ex. L at 3; Defs.' Ex. M at 33–39.)

Next, a determination of this issue of fact was essential to the final judgment in the prior action. A finding by the judge that the blue Dodge Charger was not at Fox & Fox on January 6 and February 6 was essential to finding that Detective Deshaies did not fabricate evidence, which in turn was necessary to deny Freeman's motion to suppress and secure a judgment against Freeman. *See Jennings* 714 N.E.2d at 734 (finding that order granting criminal defendant's motion to suppress was "tantamount to a dismissal," and was thus considered to be a final, appealable judgment for the purposes of collateral estoppel).

Finally, there was a final judgment on the merits. The judge in the earlier case found against Freeman on the motion to suppress—where the Fox & Fox argument was a component of Freeman's motion to suppress—and later entered judgment again Freeman on the animal welfare violations. Although Freeman had an opportunity to appeal the motion to suppress decision after judgment was entered against him for the major breeder permit violation and failure to maintain sanitary conditions violation, the Allen Superior Court docket indicates that Freeman did not lodge an appeal. Consequently, Freeman had a full and fair opportunity to litigate his factual argument that the blue Dodge Charger was at Fox & Fox when Detective Deshaies claimed he saw Freeman enter and drive the vehicle. Therefore, collateral estoppel bars Freeman from relitigating the factual issue of whether the blue Dodge Charger was at Fox & Fox on January 8 and February 6.

Because Freeman has not put forth any additional evidence or argument creating a genuine issue of material fact as to whether Detective Deshaies had the requisite probable cause to make an arrest for drug-related and traffic-related violations, his federal claim for false arrest and false imprisonment do not survive summary judgment.

## 2. *State Law*

Indiana law defines false imprisonment "as the unlawful restraint upon one's freedom of movement or the deprivation of one's liberty without consent." *Bentz*, 577 F.3d at 779 (quoting *Earles v. Perkins*, 788 N.E.2d 1260, 1265 (Ind. Ct. App. 2003)). Under Indiana law, "[a] defendant may be liable for false arrest when he or she arrests the plaintiff in the absence of probable cause to do so." *Miller v. City of Anderson*, 777 N.E.2d 1100, 1104 (Ind. Ct. App. 2002) (citations omitted).

The absence of probable cause is an essential element of the Plaintiff's claim for false arrest. *See Garrett v. City of Bloomington*, 478 N.E.2d 89, 94 (Ind. Ct. App. 1985). The test "is not whether the arrest was constitutional or unconstitutional, or whether it was made with or without probable cause, but whether the officer believed in good faith that the arrest was made with probable cause and that such belief was reasonable." *Id.*

As explained above in connection with the federal law analysis, the evidence demonstrates that Detective Deshaies had probable cause at the time he prepared the arrest warrant affidavits in question. Freeman has failed to present sufficient evidence creating a genuine issue of material fact as to probable cause. Therefore, as the absence of probable cause is a necessary element for a plaintiff's false arrest and false imprisonment claims under Indiana law, to the extent Freeman makes any false arrest or false imprisonment state law claim, it does not survive summary judgment.

## D.    Seizure of Property and Dogs Under Federal Law – Procedural Due Process

Freeman also contends that while executing the search warrant of his residence, law enforcement seized his dogs and other unspecified property in violation of his procedural due

process rights. The Fourteenth Amendment provides that a state official shall not "deprive any person of life, liberty, or property . . . without due process of law." Nevertheless the requirements of the due process clause are met when a state tort claims provides a method by which a person can seek reimbursement for negligent loss or intentional deprivation of property. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it provides or refuses to provide a suitable post deprivation remedy."). Indiana's tort claims act (Indiana Code § 34-13-3-1 et seq.) provides for state judicial review of property losses caused by government employees and provides an adequate post-deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("[Plaintiff] has an adequate post-deprivation remedy in the Indiana Tort Claims Act, and no more process was due."). Consequently, as Freeman has adequate post-deprivation remedies available under Indiana law, he has no procedural due process claim for the seizure of his property, including his dogs.[5]

E.     **Seizure of Property and Dogs – Substantive Due Process and the Fourth Amendment**

Freeman claims that the confiscation and damage of his dogs and property violated his Fourteenth Amendment substantive due process rights. The Supreme Court has stated: "Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Albright v. Oliver*, 510

---

[5] "The courts in this and in other states in numerous decisions have held that dogs are property." *Vantreese v. McGee*, 60 N.E. 318, 318 (Ind. Ct. App. 1901).

U.S. 266, 273 (1994) (internal citations omitted); *Serino v. Hensley*, 735 F.3d 588, 593–94 (7th Cir. 2013) (constitutional claims relating to pretrial deprivations of liberty must be analyzed under the appropriate constitutional amendment, not due process generally). Here, the Fourth Amendment provides an explicit source of protection for the seizure of Freeman's dogs and property. *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978) (the Fourth Amendment protects against the use of false evidence to secure a search warrant); *Alexander v. McKinney*, 692 F.3d 553, 558 (7th Cir. 2012) (the Fourth Amendment protects against the use of false evidence to justify an arrest without probable cause); *Altman v. City of High Point*, 330 F.3d 194, 204–05 (4th Cir. 2003) (recognizing that the killing of a pet dog is a destruction of property is considered a seizure under the Fourth Amendment); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 210 (3d Cir. 2001) (same).

To the extent Freeman makes a claim under the Fourth Amendment for the seizure of Freeman's dogs and property, it too fails. As a preliminary matter, Freeman presents no evidence or argument with respect to the destruction or seizure of property beyond his dogs. In fact, Freeman does not make any specific mention of property seized apart from his dogs.

Next, the Defendants have submitted evidence establishing that the actions of law enforcement with respect to confiscation and euthanizing of the dogs was reasonable. *See Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008) (stating that law enforcement's seizure of a pet dog during the effectuation of a search warrant is constitutional when it is reasonable). The evidence submitted demonstrates the dogs found at Freeman's residence were kept in unsanitary and unsafe conditions in violation of local law. (*See* Defs.' Ex. G; Defs.' Ex. K at 7–8.). Removing the dogs from the unsanitary and unsafe environment was therefore reasonable and consistent with local law. (*See* Defs.' Exs. G–J; Defs.' Ex. K at 7–8.) Law enforcement was also reasonable

in euthanizing certain dogs because the dogs that were euthanized displayed behavior that posed a threat to public safety. (*See* Defs.' Ex. G, ¶¶ 29–30.) Freeman has presented no evidence or argument beyond conclusory statements suggesting that law enforcement was unreasonable in seizing the dogs and euthanizing certain ones that displayed aggressive behavior. Accordingly, Freeman's Fourth Amendment claim fails.

**F.      Seizure and Destruction of Property in Violation of Fifth Amendment Takings Clause**

Freeman argues that the confiscation of his dogs and other property was in violation of the Takings Clause of the Fifth Amendment. The Takings Clause provides, "nor shall private property be taken for public use, without just compensation." It is made applicable to the States by the Fourteenth Amendment. *Kelo v. City of New London*, 545 U.S. 469, 472 n.1 (2005). But, the Takings Clause does not apply when property is retained or damaged as the result of the government's exercise of its authority pursuant to some power other than the power of eminent domain. *See AmeriSource Corp. v. United States*, 525 F.3d 1149, 1154 (Fed. Cir. 2008) (citing *Bennis v. Michigan*, 516 U.S. 442, 452 (1996)). When the government's actions are taken under the government's police power, such as effectuating a warrant, the Taking Clause claim is a "non-starter." *Johnson v. Manitowoc Cnty.*, 635 F.3d 331 (7th Cir. 2011) (finding in a § 1983 claim that the plaintiff did not have a claim under the Takings Clause for damages that occurred to property during the execution of a search warrant).

Here, law enforcement seized Freeman's property during a search of his house pursuant to a valid search warrant, which falls under the state's police powers. Accordingly, as the seizure and damage to Freeman's property, including his dogs, was not incidental to the government

exercising its power of eminent domain, Freeman's Fifth Amendment Takings Clause claim fails.

## G.  Damage to Property in Violation of Fourth Amendment

Freeman also appears to argue that his Fourth Amendment rights were violated when officers damaged his property during the execution of the search warrant. In order for a § 1983 claim for property damage caused during the execution of valid search warrant to proceed, the plaintiff must present evidence that specific officers conducting the search acted unreasonably in executing the search warrant when the totality of the circumstances are considered. *See Molina v. Cooper*, 325 F.3d 963, 974–75 (7th Cir. 2003) (affirming district court's grant of summary judgment as plaintiff failed to present evidence that the alleged damage was unreasonable and as plaintiff failed to identify which of the seventeen officers involved in the search caused the alleged damage). There is no evidence suggesting that an individual officer caused damage to Freeman's property or that such damage was unreasonable. Hence, Freeman has no viable constitutional claim based on damage to his property incidental to law enforcement's search of his residence pursuant to a warrant.

## G.  Intentional Infliction of Emotional Distress and Conversion

Freeman's claims for intentional infliction of emotional distress and conversion cannot proceed due to the immunities and requirements of the Indiana Tort Claims Act (ITCA). The ITCA limits when a plaintiff can sue a governmental entity or employee. *Bushong v. Williamson*, 790 N.E.2d 467, 471 (Ind. 2003). A more specific provision provides that neither a governmental entity nor a government employee acting within the scope of his employment is liable if a loss

results from the adoption and enforcement of a law, "unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34–13–3–3(8). Indiana state courts have made clear that the ITCA immunity provision goes so far as to protect officers from liability for both tortious and even criminal acts where the purpose of the employee's conduct was to further the employer's business. *See City of Anderson v. Weatherford*, 714 N.E.2d 181, 186 (Ind. Ct. App. 1999) (citing *Kemezy v. Peters*, 622 N.E.2d 1296, 1298 (Ind. 1993)); *see also Serino v. Hensley*, 735 F.3d 588 (7th Cir. 2013). "Common law 'add-on' torts, such as [intentional infliction of emotional distress], are not exceptions to the law enforcement immunity under the ITCA." *Parish v. City of Elkhart*, No. 3:07-CV-452, 2010 WL 4054271, at *4 (N.D. Ind. Oct. 15, 2010).

Freeman's state law claims for intentional infliction of emotional distress and conversion arise out of actions that the Detective Deshaies and law enforcement took while acting in the scope of their employment. Specifically, Detective Deshaies and law enforcement were acting as employees when they obtained and executed a search and arrest warrant, and their actions furthered the State's business. The loss that the Plaintiff alleges he suffered resulted from the officers' enforcement of the law. Accordingly, the ITCA provides immunity to Detective Deshaies and law enforcement from the Plaintiff's claims for intentional infliction of emotional distress and conversion.[6] *See id.* (immunizing city police officers through the ITCA from state law claims).

---

[6] As the state law claims against the officers fails for intentional infliction of emotional distress and conversion, so do these claims as alleged against the City of Fort Wayne under the doctrine of respondeat superior. *Branham v. Celadon Trucking Serv., Inc.*, 744 N.E.2d 514, 525 n.2 (Ind. Ct. App. 2001) (not reaching the issue of vicarious liability for employer under the doctrine of respondeat superior as summary judgment was granted in favor of all individual defendants).

**H.     Malicious Prosecution**

Freeman also asserts a claim for malicious prosecution under federal law. To assert a §
1983 claim for malicious prosecution against Detective Deshaies, Freeman "must allege that the
officers committed some improper act after they arrested him without probable cause, for
example, that they pressured or influenced the prosecutors to indict, made knowing
misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence."
*Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 901 (7th Cir. 2001). "To
state a claim for malicious prosecution claim under section 1983, a plaintiff must demonstrate
that (1) *he has satisfied the elements of a state law cause of action for malicious prosecution*; (2)
the malicious prosecution was committed by state actors; and (3) he was deprived of liberty."
*Reed v. City of Chicago*, 77 F.3d 1049, 1051 (7th Cir. 1996) (emphasis added). Under Indiana
law, "the elements of a malicious prosecution action are: (1) the defendant instituted or caused to
be instituted an action against the plaintiff; (2) the defendant acted maliciously in so doing; (3)
*the defendant had no probable cause to institute the action*; and (4) the original action was
terminated in the plaintiff's favor." *Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457,
462 (7th Cir.2009) (internal citations omitted) (emphasis added).

As explained above, law enforcement and Detective Deshaies had probable cause to
arrest Freeman for driving with a lifetime suspension and for drug dealing. Consequently,
Freeman's claim of malicious prosecution against Detective Deshaies is barred. (*See Mustafa v.
City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute
defense to any claim under Section 1983 against police officers for . . . malicious prosecution.")

To the extent Freeman makes a claim against the City of Fort Wayne for malicious
prosecution under federal law, it too must be dismissed. Municipalities cannot be held liable for

violation of § 1983 solely under a theory of respondeat superior. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). "[Municipalities] can, however, be sued directly under Section 1983 where the alleged unconstitutional action implements or executes an official policy statement, ordinance, regulation, or decision." *Treece v. Vill. of Naperville*, 903 F. Supp. 1251, 1259 (N.D. Ill. 1995) (citing *Monell*, 436 U.S. at 694). Freeman has not presented any evidence or argument that a City of Fort Wayne policy or decision is responsible for any of the alleged constitutional violations alleged his Complaint. Thus, summary judgment against Freeman's claim for malicious prosecution is proper.[7]

## CONCLUSION

For these reasons, the Court DENIES the Defendant's Motion to Strike [ECF No. 50] and GRANTS the Defendant's Motion for Summary Judgment [ECF No. 40]. The Clerk will enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED on January 29, 2019.

s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[7] The Court need not analyze whether Detective Deshaies has qualified immunity as no constitutional right has been violated, much less a violation of a clearly established constitutional right. *See Siegard v. Gilley*, 500 U.S. 229, 232 (1991) (once a defendant pleads the affirmative defense of qualified immunity, the plaintiff must then show a violation of a clearly established constitutional right at the summary judgment stage).